IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

Northern Division

ASSATEAGUE COASTKEEPER,                      )
9931 Old Ocean City Blvd.                    )
Berlin, MD 21811                             )
Worcester County                             )

ASSATEAGUE COASTAL TRUST,                    )
9931 Old Ocean City Blvd.                    )
Berlin, MD 21811                             )
Worcester County                             )

KATHY PHILLIPS,                              )
P.O. Box 819                                 )
Ocean City, MD 21843                         )
Worcester County                            )
           and                               )

WATERKEEPER ALLIANCE, INC.                   )
50 South Buckhout St.                        )
Suite 302                                    )
Irvington, NY  10533                         )

            Plaintiffs,                       )     Civil No._____
                                             )     COMPLAINT
            v.                               )
                                             )
ALAN & KRISTIN HUDSON FARM                   )
9101 Logtown Rd.                             )
Berlin, MD 21811                             )
Worcester County                            )
                                             )
            and,                             )
PERDUE FARMS INC.                            )
31149 Old Ocean Rd.                          )
Salisbury, MD 21804                          )
Wicomico County                             )

            Defendants.                       )

## INTRODUCTION

1.      This is a civil action brought under the citizen suit provision, 33 U.S.C. §1365, of the Federal Water Pollution Control Act (commonly known as the Clean Water Act and hereinafter referred to as the CWA), 33 U.S.C. §§1251 et seq. Defendants have discharged pollutants into the waters of the United States without a permit, in violation of §301(a) of the CWA, 33 U.S.C. §1311(a). In the alternative, defendants have discharged pollutants into the waters of the United States in violation of their General CAFO NPDES Permit No. MDG01 from a Concentrated Animal Feeding Operation (CAFO).

2.      Plaintiffs seek a declaratory judgment, injunctive relief, remedial relief, the imposition of civil penalties, and the award of costs, including attorney and expert witness fees.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over the claims specified in this Complaint pursuant to 33 U.S.C. §1365(a) and 28 U.S.C. §1331. The relief requested is authorized pursuant to 33 U.S.C. §§1319 and 1365(a), and 28 U.S.C. §§ 2201 and 2202.

4.      In compliance with 33 U.S.C. §1365(b)(1)(A), on December 17, 2009, plaintiffs gave notice of the violations specified in this complaint and of their intent to file suit to the defendants, to the Administrator of the United States Environmental Protection Agency (EPA), to the Regional Administrator of the EPA, to the United States Attorney General, and to the State of Maryland. A copy of the notice letter is attached hereto as Exhibit A.

2

5.     Sixty days have passed since the notice was served, and the violations complained of in the notice letter are continuing at this time, or are reasonably likely to continue. Defendants remain in violation of the CWA. Neither the EPA nor the Maryland Department of the Environment (MDE) has commenced or is diligently prosecuting a civil or criminal action to redress the violations.

6.     Venue is appropriate pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the sources of all violations complained of have occurred in the District.

**PLAINTIFFS**

7.     Plaintiff Kathy Phillips resides at P.O. Box 819, Ocean City, Worcester County, Maryland 21843, and is also identified in the community as, and is employed as, the Assateague Coastkeeper (Coastkeeper). Coastkeeper is a full-time on-the-water advocate for the protection and health of waters of the Eastern Shore, located at 9931 Old Ocean City Blvd., Berlin, Worcester County, Maryland 21811.

8.     Plaintiff Phillips is employed as the Coastkeeper by the Assateague Coastal Trust (ACT), located at 9931 Old Ocean City Blvd., Berlin, Worcester County, Maryland 21811, an environmental non-profit organization working to protect and enhance the natural resources of Worcester County, which encompasses the Chesapeake Bay watershed and the Atlantic Coastal Bays, through advocacy, conservation, and education. ACT has standing in this suit to protect its own interests and those of its individual members in a representative capacity. ACT's organizational purposes are adversely affected by defendants' discharges, which degrade waters and adjacent lands and impair the habitability, the recreational value, and aesthetic benefits of the local communities.

3

9.     ACT has approximately 700 members across the state of Maryland. The majority reside in Worcester, Wicomico, and Somerset Counties, next to and in the general vicinity of defendants' poultry CAFO. The environmental, economic, health, aesthetic, and recreational interests of ACT's members have been, are being, and will be adversely affected by defendants' illegal discharges into waters of the United States. Members of ACT use and enjoy the waters and lands impacted by the runoff from defendants' poultry CAFO, including waters downstream from defendants' discharges into waters of the United States. Defendants' discharges flow into drains, ditches, and tributaries, which then flow into the Pocomoke River and ultimately the Chesapeake Bay. Plaintiff's members specifically use, recreate in, and enjoy these areas in the following ways:

a.     ACT's members live within the watershed impacted by discharges from defendants' CAFO;

b.     ACT's members earn a living on the waters impacted by discharges from defendants' CAFO.

c.     ACT's members recreate, or would recreate, by fishing, rafting, swimming, and boating in and around the waters impacted by discharges from defendants' CAFO;

d.     ACT's members observe and enjoy wildlife in the watershed around defendants' CAFO;

e.     ACT's members have an aesthetic and health interest in keeping the waters in the vicinity of defendants' CAFO free of animal manure and other discharged pollutants.

4

10.     Defendants' discharges alleged herein have adversely affected and continue to adversely affect ACT's members' above-described use and enjoyment of the waters affected by defendants' discharges.

11.     Enforcement of the CWA will help restore and preserve water quality, thereby promoting the objectives of ACT and improving the use and enjoyment of the area by its members.

12.     Plaintiff Waterkeeper Alliance, Inc. is located at 50 South Buckhout St., Suite 302, Irvington, NY 10533.

13.     Waterkeeper Alliance sues on behalf of itself and its 11,500 individual members. It is a national non-profit organized under the laws of the State of New York representing the interests of nearly 200 member watershed groups, including the Coastkeeper described above. Waterkeeper Alliance promotes water quality protection and the restoration of waters, including the Pocomoke River and the Chesapeake Bay, through litigation, education, scientific research, and other legal means; advocates compliance with environmental laws such as the CWA and RCRA; responds to citizen complaints; identifies threats to bodies of water; and generally works to guarantee the public's right to a pollution-free environment.

14.     Numerous Waterkeeper members use and enjoy the Chesapeake Bay and its surrounding waterways for fishing, swimming, boating, rafting, and observing wildlife.

## DEFENDANTS

15.     Defendant Alan and Kristin Hudson Farm (Hudson Farm) is owned and operated by Alan and Kristin Hudson, located at 9101 Logtown Rd, Berlin, Worcester County, Maryland, 21811. With

5

80,000 birds and longstanding, open storage of manure, Hudson Farm is considered a large CAFO under applicable regulations.

16.    Poultry Integrator Defendant Perdue Farms, Inc. (Perdue) is located at 31149 Old Ocean Rd., Salisbury, Wicomico County, Maryland, 21804. Perdue is an "integrator" who, upon information and belief, maintains a contract with Hudson Farm under which Hudson Farm raises poultry on behalf of, for the benefit of, and under the supervision of Perdue.  At times pertinent to this complaint, Perdue individually and/or by and through its duly authorized agents, servants, employees, and/or contractors who were and are acting in the course and scope of their agency, servitude, employment, and/or contracts and in the furtherance of the business of Perdue, has been engaged in poultry growing operations on the Eastern Shore and is responsible for the poultry waste created by Hudson Farm, its handling and storage, and its disposal on surrounding lands and the resultant injury to the nearby waterways.

## FACTS

**A.    Background on the Chesapeake Bay and the Clean Water Act**

17.    The Chesapeake Bay is North America's largest and most biologically diverse estuary, home to more than 3,600 species of fish and animals. Its waters have historically provided unique economic and recreational opportunities for the residents of Maryland and other states.

18.    The Chesapeake Bay is under stress and it, and its tributaries, are increasingly threatened by increasing sediment and nutrient loads.

19.   Agriculture is one of the leading causes of nutrient contamination in the Chesapeake Bay. Pollutants found in agriculture wastes include fecal coliform, E. coli bacteria, nitrogen, phosphorus, ammonia, and nitrates.

a.   Fecal coliform and E. coli bacteria are both microbial pathogens associated with human or animal wastes. E. coli is a single species of bacteria in the fecal coliform group. High-levels of fecal bacteria can indicate that water is not safe for body-contact recreation, for consumption of shellfish, or for use as drinking water. Excessive amounts of fecal bacteria in water used by humans can cause diarrhea, cramps, nausea, headaches, or other symptoms. In Maryland, the current standard requires that the geometric mean of E. coli density not exceed 126 MPN/100mL for impaired waters.

b.   Elevated levels of nitrogen and phosphorus in waters can produce harmful algal blooms. In turn, these blooms can produce "dead zones" in water bodies where dissolved oxygen levels are so low that most aquatic life cannot survive. This condition in water bodies is referred to as hypoxia.

20.   Poultry growing operations in the State of Maryland are estimated to generate a billion pounds of poultry waste per year.

21.   The CWA was enacted by Congress in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

22.   Section 301 of the CWA, 33 U.S.C. §1311(a) prohibits the discharge of any pollutant from a point source into waters of the United States unless such discharge is permitted by a National

7

Pollution Discharge Elimination System (NPDES) permit.

23.     The CWA defines "pollutant" to include solid waste, biological materials, and agricultural waste discharged into water. 33 U.S.C. §1362(6).

24.     Given the well-documented discharges from CAFOs, Congress recognized the need to designate CAFOs as point sources under the CWA.  33 U.S.C. §1362(14).

**B.     Hudson Farm is Illegally Discharging Pollutants into Waters of the United States**

25.     Section 301 of the CWA, 33 U.S.C. §1311(a), prohibits the discharge of any pollutant from a point source into waters of the United States unless such discharge is permitted by a NPDES permit.

26.     Hudson Farm is a CAFO as defined by the CWA, 40 C.F.R. §122.23.

27.     On December 30, 2008 Maryland issued its CAFO NPDES Permit that maintains a "zero discharge" standard, prohibiting any discharges of pollutants to surface waters of the United States.

28.     Upon information and belief, Hudson Farm submitted a Notice of Intent with the MDE to be covered under the MD CAFO permit. However, this permit has not yet been issued.

29.     Upon information and belief, MDE sent Hudson Farm a Compliance Agreement, which requires Hudson Farm to comply with certain terms and conditions of the MD CAFO permit, including the zero discharge requirement, until such time as its CAFO permit is issued.

30.     Alternatively, even if the NPDES permit is found to be in effect and Hudson Farm is deemed to be covered by it, the facility is in violation of a zero discharge permit. The MD CAFO permit prohibits any discharges of pollutants to surface waters of the State from CAFO production areas, unless

it results from a storm event greater than the 25-year, 24-hour storm. NPDES Permit NO. MDG01 Part B.2.

31.      Upon information and belief, defendants have repeatedly discharged and continue to discharge pollutants through a point source into waters of the United States, including the Franklin Branch, the Pocomoke River, and the Chesapeake Bay.

32.      Hudson Farm, including its shed and production area, is surrounded by a series of drainage ditches that carry water from the farm to the surrounding waterways. The main flow of water from these ditches runs into the Franklin Branch, which in turn flows to the Pocomoke River, a navigable water of the United States. The Pocomoke empties into the Chesapeake Bay. Both the Pocomoke and the Chesapeake Bay are listed as nutrient impaired waters under the CWA.

33.      On October 30, 2009, Plaintiff Coastkeeper sampled running water in the drainage ditch downstream of the Hudson Farm. These water sample results show high numbers of fecal coliform and E. coli bacteria.  Nitrogen, phosphorus, and ammonia were also found in the discharges.

34.      On November 11, 12, and 16, 2009, Plaintiff Coastkeeper sampled running water downstream of the Hudson Farm. These water sample results show high numbers of fecal coliform and E. coli bacteria.  Nitrogen, phosphorus, and ammonia were also found in the discharges.

35.      On December 9, 2009, Plaintiff Coastkeeper sampled running water downstream of the Hudson Farm. These water sample results show high numbers of fecal coliform and E. coli bacteria. Nitrogen, phosphorus, and ammonia were also found in the discharges.

36.      Upon information and belief, defendants also discharged illegally on December 29, 2009, January 18, 2010 and February 12, 2010, after receiving the notice letter, (Exhibit A), as water sample

results show high numbers of fecal coliform and E. coli bacteria, as well as nitrogen, phosphorus, and ammonia. These results, and others taken by MDE, show that the illegal discharges coming from defendants' farm are ongoing and likely to continue.

37.     Sample results show fecal coliform counts as high as 280,000 MPN/100ml and E. coli counts as high as 155,310 MPN/100ml, greater than one thousand times over Maryland standards for impaired waters.

38.     Upon information and belief, defendants' discharges alleged herein were not due to or a direct result of a "25-year 24-hour rainfall event for that location."

**C.     Poultry Integrator Perdue Supervises, Dominates, and Controls the Actions and Activities of its Contract Grower, Hudson Farm**

39.     Perdue is in the business of producing poultry and/or poultry products for sale and consumption in the United States and internationally.

40.     Perdue is intimately involved in and controls each stage of the poultry growing process at its contract growers, including Hudson Farm.

41.     The contracts establishing the growing arrangements between Perdue and its poultry growers, including Hudson Farm, are presented to the poultry growers with no opportunity to negotiate their essential terms.

42.     Under the terms of a typical Perdue contract for broilers, a poultry grower agrees to raise to adulthood a flock of birds belonging to Perdue.

43.     Perdue supplies the birds to its respective poultry growers, and retrieves its birds when the birds

10

reach maturity.

44.     The birds are owned by Perdue throughout the entire growing process.

45.     Additionally, Perdue formulates, provides, and owns the feed that is fed to its birds during the growing process. The constituents found in poultry waste are influenced by the feed formulas.

46.     Further, upon information and belief, Perdue dictates to its respective poultry growers all aspects of the care and handling for its birds. Specifically, it dictates, without limitation:

     a.     the type of the buildings, equipment, and other facilities used in the poultry grower's operation;

     b.     the feed to be fed to the birds;

     c.     the feed supplements to be fed to the birds;

     d.     the medications and vaccinations to be provided to the birds; and

     e.     the environmental conditions under which the birds are raised.

47.     During the growing process, Perdue makes periodic site visits to its respective poultry growers' operations to supervise operations and to ensure compliance with its dictates regarding the care and handling of its birds.

48.     In sum, Perdue so supervises, dominates, and controls the actions and activities of its respective poultry growers that the relationship is not one of independent contractor, but rather one of employer and employee or one of principal and agent.

49.     Because Perdue at all times owns its birds being raised in the Chesapeake Bay area, formulates and owns the feed being fed to its birds, and supervises, dominates, and controls the actions

11

and activities of its growers, including Hudson Farm, Perdue is responsible for the safe handling and disposal of the poultry waste generated in the course of the poultry growing operations associated with their respective birds.

50.　　Under the CWA, an owner or operator of a facility is specifically defined as "any person who owns, leases, operates, controls or supervises a source." 33 U.S.C. § 1316(a)(4).

51.　　Because Perdue at all times owns its birds being raised in the Chesapeake Bay area, formulates and owns the feed being fed to its birds, and supervises, dominates, and controls the actions and activities of its growers, including Hudson Farm, Perdue is considered an owner or operator of Hudson Farm for purposes of the CWA and associated liability.

## ALLEGATIONS

### COUNT 1

#### Discharge of Pollutants Without NPDES Permit

52.　　Plaintiffs re-allege all paragraphs 1-51.

53.　　Section 301(a) of the CWA, 33 U.S.C. §1311(a), prohibits the discharge of pollutants from a point source into navigable waters of the United States, unless pursuant to the terms of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. §1342.

54.　　Defendants discharged and continue to discharge pollutants from Hudson Farm CAFO, a point source, into waters of the United States without obtaining a NPDES permit.

55.　　By discharging and continuing to discharge pollutants such as solid waste, biological

materials, and agricultural waste, including fecal coliform, E. coli bacteria, nitrogen, phosphorus, ammonia, and nitrates, without a permit into waters of the United States as detailed herein, defendants violated and continue to violate section 301(a) of the CWA, 33 U.S.C. §1311(a).

## COUNT 2

### Discharge of Pollutants Not Authorized by NPDES Permit

56.     Plaintiffs re-allege paragraphs 1-51.

57.     The CWA requires a NPDES permittee to comply with all conditions of its permit. 33 U.S.C. §§ 1311(a), 1365(f)(2), (f)(6); 40 C.F.R. § 122.41.

58.     In the event that the defendants are deemed to be covered by the MD CAFO permit, defendants are in violation of a zero discharge permit. The MD CAFO permit prohibits any discharges of pollutants to surface waters of the State from CAFO production areas, unless it results from a storm event greater than the 25-year, 24-hour storm. NPDES Permit NO. MDG01 Part B.2.

59.     Due to the above described regularly occurring discharges, defendants are likely to continue discharging pollutants from the Hudson Farm into waters of the United States.

60.     By discharging and continuing to discharge pollutants such as solid waste, biological materials, and agricultural waste, including fecal coliform, E. coli bacteria, nitrogen, phosphorus, ammonia, and nitrates, without a permit into waters of the United States as detailed herein, defendants violated and continue to violate section 301(a) of the CWA, 33 U.S.C. §1311(a) by violating the terms and conditions of their NPDES permit.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully request that this Court grant plaintiffs the following relief:

A.     Issue a declaratory judgment that defendants have violated and continue to violate the CWA;

B.     Enjoin defendants from operating their poultry CAFO in such a manner as will result in further violation of the CWA [and their NPDES permit, if they are deemed covered by it]. In particular, plaintiffs seek an order enjoining defendants from discharging or engaging in activities likely to discharge any pollutants to waters of the United States except where such discharge is due to or a direct result of a "25-year 24-hour rainfall event for that location";

C.     Order defendants to pay civil penalties of up to $37,500 per day of violation for violations starting on October 30, 2009, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§1319(d) and 1365(a), including those identified in plaintiffs' notice letter, violations identified during discovery, and violations committed subsequent to those identified in this complaint;

D.     Authorize the plaintiffs, for the period beginning on the date of the Court's order and running for five years after the defendants achieve compliance with the CWA and their NPDES permit, to sample or arrange sampling of any discharge of pollutants from Hudson Farm including upstream and downstream sampling, groundwater monitoring that could impact surface water, and soil sampling that could determine agronomic rates of uptake, with the costs of the sampling to be borne by the defendants;

E.     Order defendants to provide plaintiffs, for a period beginning on the date of the Court's order and running for five years after defendants achieve compliance with the CWA and their NPDES

14

permit, with a copy of all reports and other documents which defendants submit to EPA, to the Regional

Administrator of the EPA, or to the State of Maryland regarding defendants' discharges or NPDES

permit at the time the document is submitted to these authorities;

     F.     Issue a remedial injunction ordering defendants to pay the cost of any environmental

restoration or remediation deemed necessary and proper by the Court to comply with the CWA and

ameliorate the water degradation caused by defendants' violations;

     G.     Award plaintiffs their costs, including reasonable attorney and expert witness fees, as

authorized by 33 U.S.C. §1365(d); and

     H.     Award such other relief as this Court deems appropriate.

DATED : March ____|____ , 2010.

          Respectfully submitted,

          Jane F. Barrett
          Federal Bar # 11679
          Director, Environmental Law Clinic
          University of Maryland School of Law
          500 W. Baltimore Street
          Baltimore, MD 21201
          jbarrett@law.umaryland.edu
          410.706.8074 (office)
          410.706.5856 (fax)

15

Christine M. Meyers
Fellow
Environmental Law Clinic
University of Maryland School of Law
500 W. Baltimore Street
Baltimore, MD 21201
cmeyers@law.umaryland.edu
410.706.5999 (office)
410.706.5856 (fax)

Liane Curtis
NY State Bar #4580205
Waterkeeper Alliance
50 S. Buckhout St., Suite 302
Irvington, NY 10533
lcurtis@waterkeeper.org
914.674.0622 (office)
914.674.4560 (fax)

Chris Nidel
TX Bar #24041596
DC Bar #497059
Nidel Law, P.L.L.C.
1225 15th St., N.W.
Washington, D.C.  20005
chris@nidellaw.com
202.558.2030 (office)
202.232.7556  (fax)

Counsel for Plaintiffs