IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ASSATEAGUE COASTKEEPER <u>et al.</u> *
                                    *
          v.                        *
                                    *
ALAN AND KRISTIN HUDSON FARM        *
<u>et al.</u>                       *    Civil Action WMN-10-cv-0487
                                    *
                                    *

     *    *    *    *    *    *    *    *    *    *    *    *    *

<u>**MEMORANDUM**</u>


     Before the Court are Defendants Alan and Kristin Hudson
Farm's and Perdue Farms Incorporated's Motions to Dismiss.
Papers 14 and 15.  The motions have been fully briefed.  Upon
review of the pleadings and the applicable case law, the Court
determines that no hearing is necessary (Local Rule 105.6) and
that both Motions to Dismiss will be denied in part and granted
in part.

## I.   BACKGROUND

     This case is a citizen suit for penalties and injunctive
relief brought by the Assateague Coastkeeper, the Assateague
Coastal Trust, Kathy Phillips, and the Waterkeeper Alliance,
Inc. (collectively "Plaintiffs") under the citizen suit
provisions of the federal Clean Water Act ("CWA"), 33 U.S.C. §
1251 <u>et seq.</u>, against the Alan and Kristin Hudson Farm (Hudsons
or Hudson Farm) and Perdue Farms Incorporated (Perdue)

(collectively "Defendants").  The case relates to alleged
illegal discharges of poultry manure from the Hudson Farm
chicken operation to a field ditch that empties into the
Franklin Branch of the Pocomoke River.  Perdue is an
"integrator" that contracts with the Hudsons to raise Perdue's
chickens.

Between October and December 2009, Plaintiffs allege that
Phillips sampled water in a ditch flowing from the Hudson farm
on five separate occasions.  On each date, sample analysis
documented that the water contained pollutants, including fecal
coliform, E. coli, nitrogen, phosphorus, and ammonia.  According
to Plaintiffs, additional investigation revealed stockpiles of
what was believed to be uncovered poultry manure next to a
drainage ditch in the Hudson Farm's production area, which could
be a source of the pollutants discharging from the site.  Based
upon Phillips' investigation, Plaintiffs sent a Notice Letter on
December 17, 2009, to Defendants Hudson Farm and Perdue,
alerting them to the discharges.  Following the Notice Letter,
Plaintiffs claim that Phillips sampled the water several more
times between December 2009 and February 2010, each time showing
high levels of fecal coliform, E. coli, nitrogen, phosphorus,
and ammonia allegedly from Hudson Farm.

Plaintiffs filed this action on March 1, 2010, alleging
that Defendants violated Section 301(a) of the CWA, 33 U.S.C. §

2

1311(a), which prohibits the discharge of pollutants from a point source into navigable waters of the United States, unless pursuant to the terms of a National Pollution Discharge Elimination System (NPDES) permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.  Alternatively, if Defendants are deemed to be covered by the Maryland permit for Centralized Animal Feeding Operations, Plaintiffs claim that Defendants are in violation of a zero discharge permit.  NPDES Permit No. MDG01 Part B.2.

Defendants filed their motions to dismiss on March 29, 2010, arguing that Plaintiffs' Complaint must be dismissed pursuant to Rule 12(b)(1) and (6) of the Federal Rules for Civil Procedure[1] because Plaintiffs have failed to satisfy the notice provisions for citizen suits brought under the federal CWA, Perdue cannot be held liable solely as an integrator, Plaintiffs have failed to prove an ongoing violation, and Plaintiffs have failed to state a claim upon which relief may be granted. [2]

---

[1] Defendant Hudson Farm incorporated by reference the arguments in Defendant Perdue's motion.

[2] Defendants' motions also raised the issue that Plaintiffs did not have standing.  Perdue's Mot. 24-33.  They concede in their reply brief, however, that affidavits provided by Plaintiffs in their opposition brief "appear to cure their defective pleading regarding standing," but Defendants reserved the right "to raise the issue after discovery."  Perdue's Reply 19 n. 12.

## II.  THE REGULATORY AND PERMITTING SCHEME

When Congress first passed the CWA in 1972, it articulated a goal of restoring and maintaining the chemical, physical, and biological integrity of the nation's waters.  33 U.S.C. § 1251. To achieve this goal, the CWA prohibits the discharge of pollutants from a "point source" to "waters of the United States," except as authorized by a permit issued under the National Pollution Discharge Elimination System (NPDES) program. 33 U.S.C. §§ 1311, 1342, 1362.  The U.S. Environmental Protection Agency (EPA) administers the NDPES program, although the CWA provides for delegation of authority to the states.  33 U.S.C. §§ 1251(d), 1342(a)(5); 40 C.F.R. § 123.25(a). Accordingly, Maryland administers the federal NPDES program and issues federal discharge permits in the State.  See Howard County v. Davidsonville Area Civic and Potomac River Ass'ns, Inc., 527 A.2d 772, 774 n.3 (Md. 1987).  A delegated state must implement all aspects of the NPDES program, including issuing permits that conform to federal standards.  33 U.S.C. § 1342(b)(1)(A).

The regulations implementing the NPDES program define "animal feeding operations" (AFOs) that meet certain criteria as "concentrated animal feeding operations" (CAFOs), which are point sources under the CWA.  33 U.S.C. § 1362(14); 40 C.F.R. § 122.23.  CAFOs are designated as point sources because of

4

Congress' recognition of the increasing amounts of waste

generated by these intensive livestock production facilities.

> Animal and poultry waste, until recent years, has not
> been considered a major pollutant . . . .  The picture
> has dramatically changed, however, as development of
> intensive livestock and poultry production on feedlots
> and in modern buildings has created massive
> concentrations of manure in small areas.  The
> recycling capacity of the soil and plant cover has
> been surpassed. . . .  Precipitation runoff from these
> areas picks up high concentrations of pollutants which
> reduce oxygen levels in receiving streams and lakes
> and accelerate the eutrophication process. . . .
> [W]aste management systems are required to prevent
> waste generated in concentrated production areas from
> causing serious harm to surface and ground waters.

Statement of Senator Robert Dole, S. Rep. No. 92-414, at 100

(1972), reprinted in 1972 U.S.C.C.A.N. 3668, 3761.

The Regulations prohibit any discharge of manure, litter,

or process wastewater from the production area of a CAFO into

waters of the United States.  40 C.F.R. § 412.43(a)(1).  The

only exception to this zero discharge standard occurs when there

is a discharge as a result of a 25 year, 24 hour rainfall event.

Id.; 40 C.F.R. § 412.2(i).  CAFOs that discharge or propose to

discharge to surface waters are required to obtain an NPDES

permit.  40 C.F.R. § 122.23(d)(1).  Pursuant to its delegated

authority, the Maryland Department of the Environment (MDE)

issued a General Discharge Permit for Animal Feeding Operations

that became effective on December 9, 2009, consistent with

federal regulations with respect to CAFOs.  Maryland Permit No.

09AF, NPDES Permit No. MDG01 (General Permit or GP).   Citizens
may file suit against any person alleged to be in violation of
an effluent standard or limitation under the CWA, which includes
violations of discharging without a permit and discharging in
violation of a permit.   33 U.S.C. § 1365(a)(1) and (f).

## III. LEGAL STANDARD

Where subject matter jurisdiction is challenged under Rule
12(b)(1), the plaintiff bears the burden of persuasion to show
that jurisdiction exists.   Adams v. Bain, 697 F.2d 1213, 1219
(4th Cir. 1982).   Where a challenge is made, not to the
sufficiency of the jurisdictional allegations, but to the
underlying facts supporting those allegations, "[a] trial court
may [ ] go beyond the allegations of the complaint" and "may
consider evidence by affidavit, depositions or live testimony
without converting the proceeding to one for summary judgment."
Id.   In considering that evidence, the Court may resolve factual
disputes to determine the proper disposition of the motion.   Id.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint
must contain sufficient factual matter, . . . , to 'state a
claim to relief that is plausible on its face.'"  Ashcroft v.
Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp.
v. Twombly, 550 U.S. 544, 570 (2007)).   "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S.
Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556).  "Detailed
factual allegations" are not required, but allegations must be
more than "labels and conclusions," or "a formulaic recitation
of the elements of a cause of action[.]" <u>Iqbal</u>, 129 S. Ct. at
1949 (quoting <u>Twombly</u>, 550 U.S. at 555). "[O]nce a claim has
been stated adequately," however, "it may be supported by
showing any set of facts consistent with the allegations in the
complaint." <u>Twombly</u>, 550 U.S. at 563.  In considering such a
motion, the court is required to accept as true all well-pled
allegations in the complaint, and to construe the facts and
reasonable inferences from those facts in the light most
favorable to the plaintiff.  <u>Ibarra v. United States</u>, 120 F.3d
472, 474 (4th Cir. 1997) (citing <u>Little v. Federal Bureau of</u>
<u>Investigation</u>, 1 F.3d 255, 256 (4th Cir. 1993)).

## III. DISCUSSION

### A.   Rule 12(b)(1): Lack of Subject Matter Jurisdiction: Plaintiffs' Notice of Intention to File Suit

Citizen plaintiffs must provide a notice of intent to sue
to the alleged violator, to the U.S. Environmental Protection
Agency (EPA), and to the relevant state enforcement agency at
least 60 days prior to actually filing suit.  33 U.S.C. §
1365(b)(1)(A).  Notice in citizen suits is a "mandatory, not
optional, condition precedent" to filing suit.  <u>Hallstrom v.</u>

Tillamook County, 493 U.S. 20, 26, 31 (1989).  Without adequate
notice, the Court does not have subject matter jurisdiction to
hear the case.  Community of Cambridge Environmental Health and
Community Development Group v. City of Cambridge, 115 F. Supp.
2d 550, 558-59 (D. Md. 2000).  Notice must be "given in such
manner as the [EPA] Administrator shall prescribe by
regulation."  33 U.S.C. § 1365(b).  According to the Supreme
Court in Hallstrom, the Notice provision is intended to strike a
balance between encouraging citizen enforcement and avoiding the
burden on federal courts from excessive numbers of citizen
suits.  Id. at 29.  Requiring compliance with the Notice
provision serves this congressional goal by allowing Government
agencies the opportunity to take responsibility to enforce the
environmental regulations and by giving the alleged violator an
opportunity to correct the violation, rendering a citizen suit
unnecessary.  Id.

     EPA regulations require that notice "shall include
sufficient information to permit the recipient to identify"

     1) the specific standard, limitation, or order alleged to
        have been violated,

     2) the activity alleged to constitute a violation,

     3) the person or persons responsible for the alleged
        violation,

     4) the location of the alleged violation,

8

5) the date or dates of such violation, and

6) the full name, address, and telephone number of the
   person giving notice.

40 C.F.R. § 135.3(a).  Defendants argue that there are several
deficiencies in Plaintiffs' Notice that deprive this Court of
jurisdiction.  In particular they contend that the Notice 1)
fails to properly identify plaintiffs; 2) fails to provide
notice of the violations alleged in the Complaint; 3) fails to
allege violations of the CWA with sufficient specificity; 4)
fails to identify dates of violations.  The last three issues
will be addressed together.

**1. Sufficiency Of The Notice As To The Identification of
   Plaintiffs**

Defendants contend that the Notice fails to adequately
identify Plaintiffs Assateague Coastkeeper, Kathy Phillips, and
Assateague Coastal Trust and that the suit must be dismissed as
to those Plaintiffs.  Plaintiffs concede that they failed to
identify Assateague Coastal Trust (ACT) in the Notice Letter,
which renders the Notice Letter deficient as to ACT.  Citing to
Leonard v. Clark, 12 F.3d 885, 888 (9th Cir. 1993), they
contend, however, that the Court is not under obligation to
dismiss ACT from the suit because, if one of the plaintiffs have
standing, the court need not decide the standing of the others.

The question here is not one of standing, however, but of
notice.  The Supreme Court and the Fourth Circuit have stated
that the 60 day notice provision is to be strictly followed.
Hallstrom, 493 U.S. at 26; Monongahela Power, 980 F.2d at 275
n.2.  In light of Monongahela Power and following the Ninth
Circuit's decision in Washington Trout v. McCain Foods, Inc., 45
F.3d 1351 (9th Cir. 1995), this Court in Community of Cambridge
held that language in a notice letter stating "other interested
parties may join in as plaintiffs" was not sufficient to comply
with the statutory notice requirements as to individual
plaintiffs not specifically named in the notice letter.  115 F.
Supp. 2d at 559.  Although in Washington Trout the Ninth Circuit
dismissed the unnamed plaintiffs only after the named plaintiffs
had left the suit, this Court extended that holding to dismiss
unnamed plaintiffs regardless of whether notice was sufficient
as to other plaintiffs.  Id. at 558-59.  Thus, here, the Court
must dismiss Assateague Coastal Trust from the action.

It is a closer question whether Assateague Coastkeeper and
Kathy Phillips must be dismissed as Plaintiffs.  Although they
are identified in the Notice, their addresses and phone numbers
were not included.  The Court agrees with Plaintiffs that
Defendants likely could have obtained their contact information
from Waterkeeper Alliance, but in light of Monongahela Power and
Community of Cambridge's mandate to strictly adhere to the

notice requirements and because the EPA regulations as to notice require that a Plaintiff's address and phone number be included in the Notice letter, the Court must find that the Notice here is not sufficient as to Ms. Phillips or Assateague Coastkeeper and they will be dismissed as Plaintiffs.

### 2. Sufficiency Of The Notice As To The Facts And Laws Violated

Defendants argue that the Notice Letter sent by Plaintiffs regarding CWA violations at Hudson Farms alleged only a violation in relation to an uncovered stockpile of poultry manure next to a drainage ditch, but that their Complaint makes a broader allegation of discharge of pollutants from unspecified locations at the Hudson Farm CAFO.  They contend that the Notice provision does not allow Plaintiffs to expand their claim in this fashion, but, rather, Plaintiffs had to provide notice of the violations about which they would actually sue.  Moreover, they contend that "actual" or "constructive" notice of the expanded claim is not sufficient, because the notice provisions require strict compliance.

The Court does not agree that Plaintiffs' Notice is to be read as narrowly as Defendants argue.  "Although the notice must be sufficiently adequate so that the recipients can identify the basis for the complaint, 'the citizen is not required to list every specific aspect or detail of every alleged violation. Nor

11

is the citizen required to describe every ramification of a
violation.'"   Community Ass'n for Restoration of the
Environment v. Henry Bosma Dairy, 305 F.3d 943, 951 (9th Cir.
2002) (citing Public Interest Research Group v. Hercules, Inc.,
50 F.3d 1239, 1248 (3rd Cir. 1995)).  The Court in Hercules took
an "'overall sufficiency' approach[, which] focused on the
purpose of the notice requirement 'to provide the recipient with
effective, as well as timely notice.'"  Id. (citing Hercules, 50
F.3d at 1248 and Atl. States Legal Found. Inc. v. Stroh Die
Casting Co., 116 F.3d 814, 819 (7th Cir. 1997)).  "The key
language in the notice regulation is the phrase 'sufficient
information to permit the recipient to identify' the alleged
violations and bring itself into compliance."  Id.  Thus, "[t]he
key to notice is to give the accused company the opportunity to
correct the problem."  Atl. States, 116 F.3d at 820.  "In short,
the Clean Water Act's notice provisions and their enforcing
regulations require no more than 'reasonable specificity.'"  San
Francisco BayKeeper, Inc. v. Tosco Corp., 309 F.3d 1153, 1157-59
(9th Cir. 2002) (quoting Catskill Mtns. Chapter of Trout
Unlimited, Inc. v. New York, 273 F.3d 481, 488 (2d Cir. 2001)).

     Defendants' primary argument relates to the location of the
violation identified in Plaintiffs' Notice Letter.  As
Plaintiffs are alleging a point-source discharge violation,
their notice letter must have identified a point source.  Karr

12

v. Hefner, 475 F.3d 1192, 1203 (10th Cir. 2007).  "Point Source"
is defined as 'any discernable, confined and discrete
conveyance, including but not limited to any pipe, ditch,
channel, tunnel, conduit, well, discrete fissure, container,
rolling stock, [or] concentrated animal feeding operation . . .
from which pollutants are or may be discharged.'  33 U.S.C. §
1362(14).  Here, Plaintiffs' Notice identified the point source
as the Hudson Farm, which Defendants do not dispute is a
concentrated animal feeding operation (CAFO) under the CWA.
Thus, no further description of the location of the violation in
the Notice is necessary.

Defendants make much of the fact that the Notice Letter
refers to an uncovered poultry manure pile in the Hudson Farm
CAFO production area and argues that the Complaint should,
therefore, be restricted to that more specific source.  While
Plaintiffs' Notice refers to the manure pile as a possible
source, it was only "upon information and belief" because
Plaintiffs' were not able to go onto the Hudson Farm and
investigate the source themselves.  As such, they speculated as
to the specific source location within the CAFO.  Once
Defendants were on notice that the Hudson Farm CAFO was
allegedly discharging pollutants in the form of poultry manure
into a water source, they, not Plaintiffs, had the information

to determine from where specifically within the CAFO the discharge may have been coming and to correct the problem.

That the Notice was not specifically targeted only at the manure pile, but more generally at the CAFO, is evidenced by events and actions taken by the Maryland Department of the Environment (MDE) following receipt of the notice.  In investigating the allegations contained in Plaintiffs' Notice Letter, the MDE conducted a site assessment of the Hudson Farm CAFO that focused not only on the pile of waste, but on the entire CAFO point source.  They took water samples from ditches that flow past the waste piles and the chicken houses, took photos from around the farm, including several piles of waste, standing water, trenches, and buildings, took a soil sample, and installed piezometers in areas around the Hudson Farm.  Perdue Mot. Ex. C.  These tests showed that the pollutants of which Plaintiffs provided Notice were in the ditches surrounding the Hudson Farm CAFO.  Pl.s Opp. Ex. C.  Thus, Plaintiffs' Notice provided "sufficient information to permit the recipient to identify the . . . location of the violation" as the Hudson Farm CAFO.

Defendants argue that the actions MDE and Defendants took following the notice may show that they had "actual" or "constructive" notice of a broader potential violation as a result of Plaintiffs' letter, but "actual notice" is not

sufficient to provide this Court with jurisdiction and cite to
this Court's decision in Community of Cambridge for support.
Defendants' argument expands the holding of Community of
Cambridge, however.  As already discussed, the holding in
Community of Cambridge applied only to the requirement to
identify all individual plaintiffs in the notice letter.  It did
not discuss whether, assuming all of the notice requirements had
been met, actual notice was sufficient to allow additional
allegations stemming from the noticed violation to be included
in the complaint.  Moreover, Community of Cambridge lends
support to the argument that actual or constructive knowledge
may be used to prove that adequate notice was given.  The Court
noted in dicta that "[t]here is support for the Plaintiffs'
contention that the level of specificity required in identifying
the dates, times, places, and nature of alleged violations is
not as stringent as the City suggests." Id. at 559 n.8.  This
Court, in Chesapeake Bay Foundation v. Bethlehem Steel Corp.,
ruled that actual notice of a violation is sufficient as long as
the notice requirements are met.  608 F. Supp. 440, 450 (D. Md.
1985) (Chesapeake Bay I); Chesapeake Bay Foundation v. Bethlehem
Steel Corp. 652 F. Supp. 620, 628 (D. Md. 1987) (Chesapeake Bay
II).  In Chesapeake Bay I and II, the Court twice refused to
dismiss claims not included in the 60 day prior notice letter
when the defendants had actual knowledge of the alleged

violations.  Chesapeake Bay I, 608 F. Supp. at 450-51;

Chesapeake Bay II, 652 F. Supp. at 628.

This holding as to actual notice is held by the majority of

Circuits that have looked at the issue.  Henry Bosma Dairy, 305

F.3d at 952 (holding that where additional violations listed in

the complaint originated from the same source, the CAFO dairies,

deposited the same waste material, manure, into clearly

identifiable navigable waters of the U.S., a single drain ditch,

that they constituted a single violation that repeated over a

span of time and met the CWA notice requirements); Atl. States

Legal Foundation, 116 F.3d at 820 (holding that where "the

alleged polluter, upon receiving notice about one offending

outfall, simply redirected the stream of contaminated water to

another outfall" the polluter clearly received enough

information to correct the problem and to satisfy the purposes

of the statutory notice provisions of the CWA); Hercules, 50

F.3d at 1248 ("We find that notice of one facet of an effluent

infraction is sufficient to permit the recipient of the notice

to identify other violations arising from the same episode.").

The cases cited by Defendants are inapposite because,

unlike here, in each case the plaintiffs failed to allege each

of the notice requirements and actual notice could not be a

substitute for strictly complying with the requirements.

Hallstrom, 493 U.S. at 26, 31 (holding that citizen plaintiffs

must strictly comply with the 60 day notice period, but the
Court did not discuss what the notice must contain); National
Parks and Conservation Assn v. TVA, 502 F.3d 1316, 1330 (11th
Cir. 2007) (holding that the defendant's participation in an
earlier EPA enforcement action relating to similar allegations
did not substitute for the lack of specificity in the notice as
to pollutants and when the violations occurred); Karr, 475 F.3d
at 1203-06 (holding that the plaintiff provided no evidence that
its very broadly written notice letter, which failed to identify
pollutants discharged, the river into which the pollutants were
released, and a point source as defined by the regulations, had
resulted in remedial action on the part of defendant and that
the court did not believe that the letter, as written, could
reasonably be expected to result in appropriate action within 60
days and did not, therefore, provide sufficient notice); Stephen
v. Koch Foods, LLC, 667 F. Supp. 2d 768, 788 (E.D. Tenn. 2009)
(holding that where the notice letter alleged a discharge from
one point source, a particular pump station, that it did not
provide sufficient notice of discharges from a different pump
station).

Unlike in the cases cited by Defendants, Plaintiffs here
have met each of the regulatory notice requirements despite
Defendants' contentions to the contrary.  Actual notice is not
being used to substitute for the provision of notice, but the

actions of Defendants and MDE following receipt of Plaintiffs'
notice letter serve to demonstrate that the notice provided
sufficient information to permit Defendants to identify and
correct the violation.  The Notice Letter specifies an intent to
sue Defendants for discharges of pollutants associated with
poultry waste from the Hudson Farm CAFO into the Pocomoke River,
in violation of the CWA.  It specifies the discharged, poultry
waste, and more specifically fecal coliform, E. coli,
phosphorus, nitrogen, arsenic, and ammonia.  It specifies the
dates of the discharges – during and after each rain event on
October 30th, November 11th, 12th, 16th, and December 9th, 2009.
It also provides a detailed description of which provisions of
the CWA Plaintiffs allege Defendants violated or, in the
alternative, that Defendants violated a zero charge permit and
specified the source of that allegation.  In particular, the
Notice letter specifies that Defendants violated 33 U.S.C. §
1311(a) and 33 U.S.C. § 1342 of the CWA and cites to statutory
and regulatory definitions to explain specifically how
Defendants violated those provisions.  It also explains that
should it be determined that Defendants are covered by the
Maryland CAFO permit, that Defendants had violated Part B.2 of
NPDES Permit No. MDG01.  Thus, the letter put the Defendants on
sufficient notice that Plaintiffs were alleging that the Hudson

Farm CAFO was discharging pollutants associated with poultry
waste into the Pocomoke River.

In the only relevant case cited by Defendants, ONRC Action
v. Columbia Plywood, Inc., the Ninth Circuit found that where
the notice provided to the defendant specified only one theory
on which the defendant's NPDES permit was invalid, but brought
suit on two additional grounds, that sufficient notice had not
been provided as to those two additional causes of action.  286
F.3d 1137, 1142-1144 (9th Cir. 2002).  The court found that, by
specifically identifying only one problem with the permit, the
defendant was not required to speculate as to other possible
reasons that its permit may not be valid.  Moreover, the court
found that, if the plaintiff had identified its other theories
in the notice, Oregon and the EPA may have decided those
additional theories, unlike the one identified in the notice,
were sufficient to call for agency action.

Although not binding on the Court, this case is nonetheless
distinguishable from the case at bar.  Here Defendants alone,
not Plaintiffs, were able to determine whether or not the
referenced pile was the source of the alleged pollutants.  In
being alerted to allegations of discharges of pollutants,
Defendants were on notice to stop those discharges whether they
came from the referenced manure pile or from some other source
within the CAFO.  Moreover, the notice of the discharges led MDE

to investigate not only the supposed manure pile, but the Hudson
Farm poultry CAFO generally.  Thus, unlike in ONRC, both
Defendants and the Government were sufficiently put on notice of
the alleged illegal discharges from the poultry CAFO, of which
one possible cause was the referenced manure pile.  The Notice
did not limit, however, the need to investigate other possible
causes if it was determined that the pile was not the cause.
Because the Notice met all of the statutory and regulatory
requirements and sufficiently put Defendants on notice of the
potential violations of the CWA such that they could attempt to
correct them, Defendants' motion to dismiss will be denied as to
this ground.

**B.   Rule 12(b)(6): Failure To State A Claim**

**1. Perdue As a Defendant**

Defendant Perdue argues that, as a matter of law, it cannot
be a Defendant in this case because it is a poultry integrator
and not required to obtain a NPDES CAFO discharge permit.
Although, it contends that this argument is to be analyzed under
Rule 12(b)(1) for lack of subject matter jurisdiction, it
provides no legal support for this basis.  Oddly, Perdue does,
however, provide legal basis for its analysis under Rule
12(b)(6) for failure to state a claim and the Court proceeds on
that basis.

Section 301(a) of the CWA states that "the discharge of any
pollutant by any person shall be unlawful."  33 U.S.C. § 1311(a)
(emphasis added).  The statute clearly makes violations by "any
person" unlawful, not solely permit-holders.  Cf. U.S. v.
Smithfields Foods, Inc., 965 F. Supp. 769, 781 (E.D. Vir. 1997)
(holding that § 309 of CWA applies to persons who violate not
just permit-holders) (rev'd on other grounds).  Courts have held
that "the CWA imposes liability both on the party who actually
performed the work and on the party with responsibility for or
control over performance of the work." U.S. v. Lambert, 915 F.
Supp. 797, 802 (S.D. W.Va. 1996) (holding person who hired
contractor liable for violation of exceeding permit
limitations).  See also U.S. v. Avatar Holdings, Inc., Civ. No.
93-281, 1995 WL 871260, *14 (M.D. Fla. Nov. 22, 1995) (holding
that where a subsidiary that holds a NPDES permit violates §
309(d) of the CWA, a parent corporation is liable if it
exercised sufficient control over the subsidiary such that "it
may be considered a 'person who violates'"); United States v.
Board of Trustees of Fla. Keys Community College, 531 F. Supp.
267, 274 (S.D. Fla. 1981) (holding contractor liable for
violations of CWA despite his belief that the contracting
college had obtained the requisite permit).

Defendant Perdue's argument that it cannot be held liable
solely because it is an integrator stems from decisions by EPA

21

and MDE that integrators do not need to be co-permitees with their contractors' chicken operations.  Defendants' contention is overstated, however, because having a permit is not the basis of an integrator's potential liability.  Rather, an integrator's liability is determined on the basis of its level of control over their contractors' chicken operations.  The EPA acknowledged this basis of liability for integrators in its 2001 Proposed CAFO Rule, in which it stated "under the existing regulation and the existing case law, integrators which are responsible for or control the performance of the work at individual CAFOs may be subject to the CWA as an operator of the CAFO."  66 Fed. Reg. 2,960, 3,024 (Jan. 12, 2001).  Had the EPA and MDE wanted to preclude integrators from liability for CWA violations, they could have written their regulations to make that explicit, but they did not do so.  Instead, they have acknowledged that an integrator may be held liable for its CAFO's violations.

Defendant Perdue, in its reply, concedes in two footnotes that integrators can exercise sufficient control over their growers to be held liable under the CWA,[3] but contend that in order to do so Plaintiff must "allege facts showing that Perdue exercises more control over the operation of the Hudson Farm than other integrators do over their contract growers."  Perdue

---

[3] Perdue Reply 7 n.4, 9 n.6.

Reply 7-8.  Perdue provides no legal basis for this assertion, however.  The level of control other integrators exert is irrelevant to whether Plaintiffs have alleged sufficient facts regarding Perdue's control over the Hudson Farm CAFO to establish their liability for its alleged illegal discharges under the CWA.

Defendant Perdue's second argument arises in a footnote where it argues that Plaintiffs' allegations of control are merely conclusory and thus fail to state a claim.  The Court disagrees.  Plaintiffs state specific factual allegations as to the control Defendant Perdue exercises over the Hudson Farm CAFO.  According to Plaintiffs, Perdue owns the chickens and provides all of the feed, fuel, litter, medications, vaccinations and other supplies necessary for the Hudson Farm CAFO to grow the chickens.  Plaintiffs also allege that Perdue dictates the aspects of care for the chickens such as the type of buildings, equipment, and other facilities used in the operation, and makes periodic site visits to ensure compliance with its dictates.  Because these allegations are not conclusory and are sufficient to state a plausible claim against Perdue at the motion to dismiss stage, Defendant Perdue's motion that the Court dismiss it as a Defendant will be denied.

## 2.   Continuing Violation

A CWA citizen suit may be brought only if there is an ongoing violation of the act at the time the complaint is filed. Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 64 (1987); Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 521 (4th Cir. 2003).  Defendants argue that the "ongoing violation" requirement is not just a matter of fact to be properly pleaded, but that it is jurisdictional and thus requires Plaintiffs to prove the ongoing violations.  Defendants then refer the Court to a significant amount of evidence, which it claims demonstrates that the violation was rectified prior to Plaintiffs' filing their Complaint.  Thus, they argue that the action must be dismissed because it was not ongoing when Plaintiffs filed their Complaint.

Defendants are incorrect regarding Plaintiffs' obligations at this stage of the proceedings, however.  Under the CWA, at the motion to dismiss stage, plaintiffs need only make a good faith allegation of continuous or intermittent violation to satisfy the jurisdictional requirement of the statute. Gwaltney, 484 U.S. at 64 ("The statute does not require that a defendant 'be in violation' of the Act at the commencement of suit; rather, the statute requires that a defendant be 'alleged to be in violation.'"); Am. Canoe Ass'n, 326 F.3d at 521.  If Defendants want to dispute the allegations and introduce

extrinsic evidence, the appropriate procedural mechanism is a motion for summary judgment.  Gwaltney, 484 U.S. at 64; Am. Canoe Ass'n, 326 F.3d at 521.[4]  Other than refer to evidence outside the pleadings in their initial motion, Defendants did not contend that Plaintiffs' failed to allege, in good faith, sufficient facts demonstrating an ongoing violation.  Nor did Defendants respond to Plaintiffs' arguments relating to those allegations.  Thus, Defendants seem to concede that Plaintiffs have sufficiently pleaded an ongoing violation and Defendants' motions to dismiss will be denied as to this basis.

### 3.    Whether Plaintiffs Have Sufficiently Alleged A Discharge From The Hudson Farm CAFO

"To establish a violation of the CWA's NPDES requirements, a plaintiff must prove that defendants 1) discharged, i.e., added 2) a pollutant 3) to navigable waters 4) from 5) a point source."  Committee to Save Mokelumne River v. East Bay Mun. Util. Dist., 13 F.3d 305, 308 (9th Cir. 1993) (citing National Wildlife Federation v. Gorsuch, 693 F.2d 156, 165 (D.C. Cir. 1982)).  Defendants argue that Plaintiffs have failed to state a claim for violation of the CWA because they have not alleged facts connecting the pollutants they found downstream from the Hudson Farm CAFO to any discharge from the CAFO.  Defendants contend that because Plaintiffs' Complaint does not specify for

---

[4] Perdue stated in its motion to dismiss that it does not wish to convert it to a motion for summary judgment.  Perdue Mot. 4 n.2.

each of the alleged violations where specifically the water testing took place that the pollutants could have come from any other place upstream or downstream of the Hudson Farm CAFO. Construing the facts alleged by Plaintiffs and reasonable inferences from those facts in the light most favorable to Plaintiffs, as the Court must on a motion to dismiss, the Court disagrees.  Here, Plaintiffs' Complaint raises a reasonable inference that the Hudson Farm CAFO, and more specifically the chicken operation, is the source of the pollutants discovered. Thus the motion to dismiss will be denied on this ground.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motions will be denied in part and granted in part.  A separate order will issue.

_____/s/_____

William M. Nickerson
Senior United States District Judge

July 20, 2010