IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Northern Division*

| | |
|---|---|
| WATERKEEPER ALLIANCE, INC., | * |
| Plaintiff, | * |
| v. | * Civil Case No.: WMN-10-0487 |
| ALAN & KRISTIN HUDSON FARM, and PERDUE FARMS INC., | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

This Memorandum and Order addresses Plaintiff Waterkeeper Alliance, Inc.'s Letter Motion Challenging Defendant Alan & Kristin Hudson Farm's CBI Designations, ECF No. 83; Defendant Hudson Farm's Response, ECF No. 92; and Plaintiff's Reply, ECF No. 95.[1] It also addresses Plaintiff's Letter Motion Challenging Defendant Perdue Farms Inc.'s CBI Designations, ECF No. 85; Defendant Perdue Farms Inc.'s Response, ECF No. 94; Plaintiff's Reply, ECF No. 96; Defendant Perdue Farms Inc.'s Surreply, ECF No. 97; and Plaintiff's Response, ECF No. 98. I find that a hearing is unnecessary in this case. *See* Loc. R. 105.6. For the reasons stated herein, those confidential business information ("CBI") designations that are the subject of Plaintiff's present motions, on which the parties have not otherwise reached agreement, and which either party intends to use, in good faith, as evidence in filing or responding to motions for summary judgment under Fed. R. Civ. P. 56 or as exhibits during

---

[1] On April 8, 2011, Judge Nickerson referred this case to me for discovery and related scheduling, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302. ECF No. 54.

1

hearings or trial are REMOVED. Accordingly, when attached as exhibits to motions for or oppositions to summary judgment or used as exhibits in a hearing or at trial, the challenged documents, now de-designated, need not be filed under seal. Similarly, the motions themselves, containing reference to the de-designated documents, need not be filed under seal. This Memorandum and Order disposes of ECF Nos. 83, 85, 92, 94, 95, 96, 97 and 98.

I.  BACKGROUND

The present dispute in this Clean Water Act, 33 U.S.C. § 1251 *et seq.*, case originates from Plaintiff's challenges to various confidentiality designations made by each Defendant during discovery pursuant to the Stipulated Protective Order agreed to by the parties, ECF No. 41, and approved by Judge Nickerson, ECF No. 42. The Order provides guidance with regards to the procedures for designating documents as CBI and for challenging CBI designations made by the opposing party. Under the Order, "confidential business information" is defined as "non-public information . . . or tangible things whose disclosure the producing party reasonably believes may harm the competitiveness of its business," and may include trade secrets, as defined under the Economic Espionage Act of 1996, 18 U.S.C. §§ 1831–1839. Stipulated Protective Order § 2.3. The designation of material as CBI must be done with "care to limit any such designation to specific material that qualifies under the appropriate standards." *Id.* § 5.1. The Order strictly prohibits "[m]ass, indiscriminate, or routinized designations." *Id.*

With regards to challenging CBI designations, the Protective Order establishes three guidelines. First, "[u]nless a prompt challenge . . . is necessary to avoid foreseeable substantial unfairness, unnecessary economic burdens, or a later significant disruption or delay of the litigation," a failure to challenge another party's CBI designations promptly does not constitute a

waiver of the right to do so.[2] *Id.* § 6.1. Second, should a party wish to challenge a CBI designation, it "must do so in good faith and must begin the process by conferring directly with [opposing] counsel." *Id.* § 6.2. Court intervention is permissible only where the Order's meet and confer procedures have been followed. *Id.* Third, after attempting to resolve the dispute by meeting and conferring, a party "may file and serve a motion that identifies the challenged material and sets forth in detail the basis for the challenge." *Id.* § 6.3. The burden of establishing the need for the confidentiality designation rests on the designating party. *See id.*

In its motion to remove Defendant Hudson Farm's CBI designations, Plaintiff, having unsuccessfully attempted to resolve the present dispute by meeting and conferring with Defense Counsel, argues that some of Hudson Farms' CBI designations are inappropriate because the documents are publicly available either through "a Public Information Act ('PIA') request to the Maryland Department of the Environment ('MDE')," or because federal and Maryland state law require the MDE to make certain materials related to the National Pollutant Discharge Eliminate System ("NPDES") permitting process "available for public inspection and comment." *See* Pl.'s Mot. to Remove Def. Hudson Farm's CBI Designations ("Pl.'s Mot. to Remove HF Design.") 1–2 (citing 33 U.S.C. § 1342(j); Md. Code Ann., Envir. § 9-324). Moreover, Plaintiff insists,

---

[2] There is some debate between Plaintiff and Defendant Perdue Farms Inc. regarding whether any waiver occurred in this case. *See* Def. Perdue's Surreply 1–2; Pl.'s Resp. 1–2. Plaintiff asserts, in its Reply to its Motion to Remove CBI Designations, that Perdue waived the confidentiality designations of certain documents by referencing those documents openly in deposition testimony. *See* Pl.'s Reply 5–6. Perdue argues, in its surreply, that under the Stipulated Protective Order, "any deposition testimony discussing a document that has been labeled 'Confidential' is afforded the same protection as the document itself." *Id.* Plaintiff responds that "Perdue's attempted designation is untimely, will significantly disrupt and delay the litigation, and will substantially prejudice and economically burden Plaintiff." Pl.'s Resp. to Def.'s Surreply 1. Because I find, waiver notwithstanding, that the challenged CBI designations should be removed, further discussion of this issue is unnecessary.

Hudson Farms has failed to establish with specificity that disclosure of the documents will result in identifiable harm to the competitiveness its business. *See id.* at 4–6.

Defendant Hudson Farms agrees to remove the CBI designations for all documents that Plaintiff was able to obtain through a PIA request to the MDE. Def. HF's Resp. 1. Hudson Farms argues that the remaining documents are properly designated CBI in light of provisions in Maryland statutory and regulatory law that require the Maryland Department of Agriculture ("MDA") to maintain certain documents "'in a manner that protects the identity of the individual for whom the [document] was prepared.'" *Id.* at 2 (quoting Md. Code Ann., Agric. § 8-801.1(b)(2)) (citing COMAR § 15.20.07.06.A(3); *Md. Farm Bur. v. Md. Dep't of Agric.*, No. C-08-134331 (Cir. Ct. Anne Arundel Cnty., Feb. 10, 2009)). In its reply, Plaintiff argues that Hudson Farm's legal authority is inapplicable, as the cited statute "is specific to the Maryland Department of Agriculture," and Plaintiff's argument relates to the availability of documents from the Maryland Department of the Environment. Pl.'s Reply to HF 1–2. Moreover, Plaintiff maintains, Hudson Farms "continues to evade its burden to establish that release of the documents . . . may harm the competitiveness of its business." *Id.* at 2.

In its motion to remove Perdue's CBI designations, Plaintiff contends that, despite efforts to resolve the dispute by meeting and conferring, Perdue has failed to establish that the designated documents satisfy the definition of CBI announced in the parties' Stipulated Protective Order, as many of the documents are publicly available. *See* Pl.'s Mot. to Remove Def. Perdue's CBI Designations ("Pl.'s Mot. to Remove Perdue Design.") 1–3. Additionally, Plaintiff argues that Perdue has failed to demonstrate with specificity its reasonable belief that disclosure would harm the competitiveness of Perdue's business. *See id.* at 7–11.

In its Response, Perdue agrees, after redacting certain information, to remove the CBI designations from four groups of disputed documents. Def. Perdue's Resp. 1. As to all other documents, Perdue states that it "produced documents in reliance on the terms of the stipulated protective order and is entitled, therefore, to the protections afforded by that order." *Id.* at 2. Additionally, Perdue insists that it "has specific and articulable reasons for designating as confidential each of the categories of documents at issue," as illustrated in the attached affidavit of Mr. Michael Levengood, a Perdue employee with "more than twenty-seven years['] experience in the poultry business." *Id.* (citing Levengood Aff. 1, Def. Perdue's Resp., Ex. 5, ECF No. 94-5). Its CBI designations, Perdue maintains, are the result of Mr. Levengood's "considered determination [regarding] whether the documents in question contain commercially sensitive information that, if publicly disclosed, would be a windfall for Perdue's competitors and put Perdue at a competitive disadvantage." *Id.* at 3. In its reply, Plaintiff asserts that Perdue's proposed redactions of some documents are too broad, potentially "conceal[ing] non-confidential information," and therefore requests that the Court remove the CBI designations without redaction. Pl.'s Reply to Perdue 2. Moreover, Plaintiff argues, "Perdue has failed to provide any evidence beyond general and conclusory allegations of harm that would result from disclosure of the documents at issue . . . [and has failed] to articulate the identifiable harm that would result from the disclosure of each type of document at issue." *Id.* (citing *Minogue v. Modell*, No. CCB-03-3391, 2011 WL 1308553, at *4 (D. Md. 2008)).

## II. DISCUSSION

Preliminarily, I commend Counsel and the parties for their diligent efforts to resolve these disputes through the meet and confer process. A number of document disputes were resolved in this manner. *See* Pl.'s Mot. to Remove HF Design. 1; Pl.'s Mot. to Remove Perdue

5

Design. 2. The parties have addressed discovery disputes cooperatively, courteously, and with professionalism, as this Court's Discovery Guidelines require. *See* Guideline 1.a; Guideline 1.d. Resolution of discovery disputes through open communication and without Court involvement, as here, allows the parties to avoid delay, expense, and uncertainty. *See* Guideline 1.d; *see also Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357–58 (D. Md. 2008).

### A. Rule 26(c) Protective Orders

The Stipulated Protective Order governing this case was entered under Fed. R. Civ. P. 26(c) and Local Rule 104.13, which provides "for the protection of confidential discovery material as defined under Fed. R. Civ. P. 26(c)(7)." *Minter v. Wells Fargo Bank, N.A.*, No. WMN-07-3442, 2010 WL 5418910, at *1 (D. Md. Dec. 23, 2010). Both the Order and this Court's Local Rules outline the procedures to be followed in the event of a dispute as to confidentiality designations, with "the burden [falling] on the party seeking confidentiality to justify it under Rule 26(c)." Loc. R. 104.13; *see* Stipulated Protective Order § 6.2.

Rule 26(c) states that "[t]he Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c). Therefore, "to establish that a document is entitled to protection from disclosure under Rule 26(c), a party must show that '(1) the material in question is a trade secret or other confidential information within the scope of Rule 26(c), and (2) disclosure would cause an identifiable, significant harm.'" *Minogue v. Modell*, No. CCB-03-3391, 2011 WL 1308553, at *4 (D. Md. Mar. 30, 2011) (quoting *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987)). Where the party seeking protection under Rule 26 is a business, "it must show that

disclosure 'would cause significant harm to its competitive and financial position.'" *Id.* (quoting *Deford*, 120 F.R.D. at 653). Rule 26 protects more than just trade secrets and confidential information. *See id.* Indeed, "courts have 'consistently granted protective orders that prevent disclosure of many types of information.'" *Id.* (quoting *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002)). If the party establishes confidentiality and harm, "then the party seeking disclosure 'must establish that the information is sufficiently necessary to [its] case to outweigh the harm of disclosure.'" *Id.* (quoting *Wilson*, 149 F.3d at 252).

Additionally, Rule 26 requires that a party's good faith assertion of confidentiality be made with specificity. The party asserting confidentiality must make "'specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm.'" *Minogue*, 2011 WL 1308553, at *4 (quoting *Deford*, 120 F.R.D. at 653); *see Minter*, 2010 WL 5418910, at *8 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the [Rule] 26(c) test."). With regards to "the claim of confidential business information, courts have found that the 'good cause' standard demands that the [business] prove that disclosure will result in a 'clearly defined and very serious injury to its business.'" *Minter*, 2010 WL 5418910, at *8 (quoting *United States v. IBM Corp.*, 67 F.R.D. 40, 46 (S.D.N.Y. 1975)).

B.  **Protective Orders at the Dispositive Motions Stage**

The Federal Rules of Civil Procedure "freely permit discovery that is broad in scope." *Bassi & Bellotti S.p.A. v. Transcon. Granite, Inc.*, No. DKC-08-1309, 2010 WL 3522437, at *3 (D. Md. Sept. 8, 2010); *see* Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be

admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). As a result, the amount of material requested and produced in discovery is substantially greater than the amount of material entered as exhibits at trial or in dispositive motions practice. *See, e.g.*, Letter from David M. Howard, Corporate Vice President & Deputy Gen. Counsel, Microsoft Corporation, to the Honorable David G. Campbell, Chair, Advisory Committee on Civil Rules 4 (Aug. 31, 2011), *available at* http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/DallasMiniConf_Comments/Microsoft.pdf (citing a "recent survey conducted by the Searle Center on Law, Regulation, and Economic Growth at Northwestern University," which reported that "only 1 in 1000 pages produced in discovery is ever actually used as evidence to resolve the merits of a case") (emphasis omitted).

Because discovery is "broad in scope and freely permitted," *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003), the use of protective orders, and specifically stipulated protective orders, is encouraged under both the Federal Rules and this Court's Local Rules. *See* Fed. R. Civ. P. 26(c); Loc. R., App'x D (containing a sample stipulated protective order regarding confidentiality of discovery material and inadvertent disclosure of privileged material); *see also Minter*, 2010 WL 5418910, at *3 (noting that "'umbrella' or 'blanket' protective orders . . . are intended to 'expedite production, reduce costs, and avoid the burden on the court of document-by-document adjudication'") (quoting *Manual for Complex Litigation* § 11.432 (4th ed. 2010)); 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Fed. Prac. & Proc.* § 2044.1 (3d ed. 2010) ("A starting point is to recall the flexibility, and sometimes the ease, that attends entry of protective orders. . . . [O]n many occasions, they are embodied in 'umbrella' orders entered on stipulation in advance of discovery and apply to all materials deemed confidential by the producing party.").

A protective order, however, "[o]nce entered, . . . need not remain in place permanently, and [it is] not immutable in [its] terms." Wright, Miller & Marcus, *supra*, § 2044.1. Indeed, protective orders are a discovery device, and not a device designed to protect the confidentiality of documents indefinitely. *See* Fed. R. Civ. P. 26(c); *cf.* Wright, Miller & Marcus, *supra* § 2044.1 (noting that protective orders "are flexible devices, subject to the district court's informed discretion"). When materials discovered pursuant to a protective order transition for use in dispositive motions practice or at trial, the significance of the documents' confidentiality designation necessarily changes. *See Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004) (noting that when documents that are "the subject of a pretrial discovery protective order . . . [are] made part of a dispositive motion, they los[e] their status as being 'raw fruits of discovery'") (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). This is true because discovery, "which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court." *Rushford*, 846 F.2d at 253.

Plaintiff challenges Defendants' CBI designations in advance of the submission of dispositive motions in this case, intending to include some of the challenged documents as exhibits to its summary judgment motion. *See* Pl.'s Mot. for Extension of Time for Mot. for Summ. J. Br. 1, ECF No. 84 (noting that the "ruling on these challenges will directly impact how Plaintiff's motion for summary judgment is filed," as "Plaintiff will both attach the CBI-designated documents at issue to its motion for summary judg[]ment and discuss the contents of such documents within the motion"). At the dispositive motions or trial stage of a proceeding, the showing necessary to justify continued designation of material as confidential increases, as the material at issue transitions from potential evidence produced during discovery to actual

9

evidence to be used in disposition of the case, and a party's interest in such a designation must be weighed against the traditional public right of access to judicial materials. *See Rushford*, 846 F.2d at 252–53 (finding that summary judgment "serves as a substitute for a trial," and that, as a result, the First Amendment access to public materials standard "should also apply to documents filed in connection with a summary judgment motion in a civil case"). Of course, "'there may be instances in which discovery materials should be kept under seal after they are made part of a dispositive motion.'" *Va. Dep't of State Police*, 386 F.3d at 576 (quoting *Rushford*, 846 F.2d at 253). The Court is to make such decisions at the time dispositive motions are made, and should "'not merely allow continued effect to a pretrial discovery protective order'" without the requisite showing of necessity. *See id.* (quoting *Rushford*, 846 F.2d at 253). Indeed, "the reasons for granting a protective order to facilitate pre-trial discovery may or may not be sufficient to justify proscribing the . . . right of access to judicial documents." *Rushford*, 846 F.2d at 254; *see also* Wright, Miller & Marcus, *supra* § 2044.1 ("[A]s a sheer matter of power the court has authority to alter the terms of a protective order it has entered . . . . As they face these requests, courts ordinarily focus primarily on the circumstances of the case before them."). Accordingly, continued designation of the challenged materials as confidential will be permitted only if Defendants have established with specificity that disclosure of the material will result in some kind of substantial harm to their respective businesses, and that that harm outweighs both the necessity of the material to dispositive motions practice in this case and the traditional right to public access of judicial documents and records.[3] *See Minogue*, 2011 WL 1308553, at *4; *Rushford*, 846 F.2d at 252–53; *Va. Dep't of State Police*, 386 F.3d at 576.

---

[3] The "right[] of access to judicial records" is protected both by the common law and the First Amendment. *See Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988). "The common law presumes a right to inspect and copy judicial records and documents." *Id.*

Defendants each fail to establish, with the required level of specificity, that disclosure of the documents challenged in Plaintiff's motions will result in substantial harm to their businesses if used as exhibits in summary judgment filings, or as exhibits at a hearing or at trial. Hudson Farm's Response to Plaintiff's motion makes no reference to any "'identifiable, significant harm'" that would result from disclosure of the challenged documents. *Minogue*, 2011 WL 1308553, at *4 (quoting *Deford*, 120 F.R.D. at 653). In fact, Hudson Farm fails even to indicate a broad, general harm that would result from disclosure. Having failed to make any showing that "disclosure 'would cause significant harm to its competitive and financial position,'" *id.* (quoting *Deford*, 120 F.R.D. at 653), Hudson Farms cannot demand the continued designation of these materials as CBI. *See* Loc. R. 104.13 (stating that the burden of justifying a confidentiality designation falls on the designating party); Stipulated Protective Order § 6.2 (same). Accordingly, the CBI designations of those documents challenged in Plaintiff's Motion to Remove Defendant Hudson Farm's CBI Designations are hereby REMOVED to the extent that either party intends, in good faith, to offer the documents as exhibits in support of or in opposition to motions for summary judgment pursuant to Fed. R. Civ. P. 56 or as exhibits in a hearing or at trial.

Unlike Hudson Farms, Perdue attempts to offer "specific and articulable reasons for designating as confidential each of the categories of documents now at issue," in the form of an

---

(citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). This presumption "may be overcome if competing interests outweigh the interest in access." *Id.* Under the First Amendment right of access, however, public "access may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Id.* The First Amendment right of access extends "only to particular judicial records and documents," including "documents filed in connection with [a] summary judgment motion in a civil case." *Id.* Under either public access analysis, Defendants have failed to show, with the required level of specificity, the necessity of their confidentiality designations.

affidavit from a Perdue employee and a chart listing and commenting on the reasons for the confidentiality designation of each challenged category of documents. Def. Perdue's Resp. 2; *see* Def. Perdue's Resp. Ex. 1 ("Def.'s Basis for Asserting CBI List"), ECF No. 94-1; Levengood Aff. Despite this greater showing, however, Perdue's explanations do not reach the level of specificity required by Fed. R. Civ. P. 26. *See Minogue*, 2011 WL 1308553, at *4. Several examples are illustrative. First, Perdue asserts the confidentiality of the document at Tab 3 of Plaintiff's challenges binder,[4] an email containing the names of and the positions held by various Perdue employees, ECF No. 85-3, on the grounds that it "[r]eveals the identities and roles of key Perdue employees." Def.'s Basis for Asserting CBI List 1. According to Mr. Levengood, a list of this nature "reveals information . . . that could be of great use to a competitor seeking to exploit the knowledge and training of current Perdue employees by 'poaching' those employees.'" Levengood Aff. ¶ 11. While the Court does not doubt Perdue's good faith belief that such "poaching" is possible, Perdue has failed to provide any "specific demonstrations of fact," or "concrete examples" that establish that, for example, Perdue has been the victim of such poaching in the past or that competitors in Perdue's field actively poach employees from other businesses. *See Minogue*, 2011 WL 1308553, at *4. Perdue has also failed to articulate what "'very serious injury to its business'" will result from such poaching; rather, Perdue notes only that competitors might use such a list to poach employees from Perdue—and does not specify what negative impact that poaching may have on its business. *See Minter*, 2010 WL 5418910, at *8 (quoting *IBM Corp.*, 67 F.R.D. at 46).

---

[4] Plaintiff submitted as attachments to their Motion to Remove CBI Designations, a binder containing representative examples of those documents for which it seeks de-designation. *See* Pl.'s Mot. to Remove Perdue Design., App'x, ECF Nos. 85-1 through 85-48. The binder tab numbers correspond with the numbers assigned to the attachments on CM/ECF.

Second, Perdue asserts the confidentiality of the document at Tab 11, a form titled "Chick Pre-Placement Audit," ECF No. 85-11, on the grounds that this "Perdue form . . . reveals the criteria that Perdue uses to assess whether and when it should place chicks with a grower." Def.'s Basis for Asserting CBI List 1. Mr. Levengood states that forms such as this "reveal information about how Perdue conducts its business—information that is not otherwise known to Perdue's competitors, who would gain an advantage by becoming aware of it." Levengood Aff. ¶ 8. Moreover, Mr. Levengood notes, "a business competitor could profit from gaining access to . . . forms, specific to the poultry business, that were designed and have been developed by Perdue." *Id.* ¶ 9. These forms "represent the culmination of many years of experimentation [by Perdue] to develop a form that most efficiently and usefully captures information deemed by Perdue to be important," and if made public, "[a] competitor . . . could simply adopt" the form "without having to spend the time and effort necessary to device and perfect its own form[] or other data-tracking system," thereby "gain[ing] a large and unfair competitive advantage." *Id.* Missing from Mr. Levengood's affidavit, however, is any indication of exactly what "identifiable, significant harm" Perdue would suffer if competitors were able to adopt a form such as the "Chick Pre-Placement Audit" Form. *See Minogue*, 2011 WL 1308553, at *4. While Perdue contends that competitors would "gain a large and unfair competitive advantage" if they were able to obtain and implement these forms, Levengood Aff. ¶ 9, it provides no additional details beyond the vague superlatives used to demonstrate the nature of that competitive advantage: Perdue does not claim that it would be forced, at great cost, to develop new forms if disclosure were permitted, nor does it indicate that its competitors use such similar procedures and processes that the forms could easily be implemented, without modification, by other farms. Mr. Levengood's unsupported assertion that "[p]oultry production is an especially competitive

13

business," where "[a]ny advantage will be exploited and even a small savings of time or money can have a tremendous impact on an integrator's ability to stay in business or expand market share," *id.* ¶ 3, on which Perdue relies entirely, fails to establish with any specificity the exact nature of the harm that would be suffered by Perdue upon disclosure of the challenged documents. Neither Mr. Levengood's affidavit, nor Perdue's Response and accompanying documents, provide "concrete examples" of the phenomenon Mr. Levengood describes or notes instances in which Perdue (or other competitors in the field) have suffered such a disadvantage. *See Minogue*, 2011 WL 1308553, at *4 (internal quotation marks and citation omitted). Indeed, Perdue's attempts to justify its CBI designations represent little more than "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Minter*, 2010 WL 5418910, at *8.

The problems identified in the foregoing examples are symptomatic of problems throughout Perdue's Response and accompanying documents, which, taken as a whole, make clear that Perdue has not satisfied its burden of establishing with specificity that "disclosure 'would cause significant harm to its competitive and financial position.'" *Minogue*, 2011 WL 1308553, at *4 (quoting *Deford*, 120 F.R.D. at 653); Loc. R. 104.13; Stipulated Protective Order § 6.2. Consequently, the CBI designations of those documents challenged in Plaintiff's Motion to Remove Defendant Perdue Farm Inc.'s CBI Designations are hereby REMOVED insomuch as either party intends, in good faith, to offer the documents as exhibits in support of or in opposition to motions for summary judgment under Fed. R. Civ. P. 56 or at a hearing or trial.

Two additional points are worth making. First, in its Response, Defendant Hudson Farms notes its concern that Plaintiff may use material produced in discovery "in a media campaign" against Defendants. *See* Def. Perdue's Resp. 3; *see also* Pl.'s Mot. to Remove HF Design. 6.

The Court does not take these concerns lightly. Indeed, "[g]iven that discovery itself is designed to prepare for trial rather than generate information for other consumption, efforts to obtain [public] access [to designated documents] for non-litigation purposes may properly be viewed less receptively by" the Court. Wright, Miller & Marcus, *supra* § 2044.1. However, under this Order, only those documents that actually are attached as exhibits to motions for or in opposition to summary judgment, and are referenced therein, or are used in hearings or at trial, are de-designated. Moreover, the parties are obligated to proceed in good faith in determining which, of the multitude of documents produced over the course of discovery, are necessary in dispositive motions practice. It is anticipated that the number of documents used in these motions, as depicted in the illustration above, will be substantially fewer than the number of documents produced during discovery. Because good faith governs use of the produced materials, neither party is granted free access to documents produced in this case for any purpose other than the narrow one permitted by this Order. Thus, the Court is confident that Plaintiff will not "pad the record" by needlessly attaching irrelevant or marginally relevant documents as motion or trial exhibits simply to inject them into the public record.

Second, Defendant Perdue states that it "produced documents in reliance on the terms of the stipulated protective order and is entitled, therefore, to the protections afforded by that order." Def. Perdue's Resp. 2 (citing *Longman v. Food Lion, Inc.*, 186 F.R.D. 331, 333 (M.D.N.C. 1999)). Perdue is correct that a "central concern [in the modification of protective orders] is whether the material in question was produced in reliance on the protective order." Wright, Miller & Marcus, *supra*, § 2044.1. Such reliance, however, must be reasonable. *See id.* Where "an order [is] entered by stipulation," or is part of "an 'umbrella' order allowing large amounts of information to be designated confidential," it "is likely to be found to provide a less

forceful basis for reliance than a more particularized order premised on a showing to the court of confidentiality." *Id.* Moreover, any reliance claimed by Perdue must be assessed in conjunction with the language of the Confidentiality Order itself, which contains specific procedures for challenging CBI designations made under the Order. Since the inception of the Order, Perdue has known that the protections it afforded were subject to subsequent challenge, and thus its reliance was not unconditional. As a result, the Stipulated Protective Order that governs this case, which permits unlimited designation of documents as confidential, does not assure that designation will continue in perpetuity. Moreover, Perdue's reliance on *Longman v. Food Lion, Inc.*, is ill-founded. In that case, plaintiffs, who had agreed to a stipulated protective order, appealed the Court's award of summary judgment in defendants' favor and moved to "unseal the entire record on appeal." *Longman*, 186 F.R.D. at 332. Prior to their appeal, plaintiffs "failed to object to confidentiality designations" made under the order. *See id.* at 333–34. While the parties in the present case, like the parties in *Longman*, agreed to the terms of a stipulated protective order, Plaintiff Waterkeeper Alliance, Inc. has objected, both in the meet and confer process, and through the present motions, to Defendants' confidentiality designations. Because Plaintiff has followed the procedures outlined in the Stipulated Protective Order for challenging CBI designations, Defendants are required, under this Court's Local Rules and the terms of the parties' Order, to establish the necessity of the designations made. Loc. R. 104.13; Stipulated Protective Order § 6.2. The record before me does not do so.

### III. CONCLUSION

In light of the foregoing, Plaintiff's Motion to Remove Defendant Hudson Farm's CBI Designations and Plaintiff's Motion to Remove Defendant Perdue Farms Inc.'s CBI Designations are GRANTED for the limited purpose of attaching the challenged documents as

exhibits in the summary judgment filings, or for subsequent use as exhibits during hearings or trial of this case. Accordingly, the challenged documents, when attached as exhibits to summary judgment filings or used as exhibits during hearings or trial need not be filed under seal. Similarly, the motions themselves, containing reference to the undesignated documents, need not be filed under seal.

Dated: <u>November 10, 2011</u>　　　　　　　　　　　　　_____ /S/_____

　　　　　　　　　　　　　　　　　　　　　　　　　　　Paul W. Grimm
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

hlw